UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RODRIGUEZ, an individual and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.; DAVID AIMILIOS,<br><br>                      Defendants. | Case No. 25-cv-00626-BAS-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**<br><br>**(ECF Nos. 12, 13)** |

      Defendant General Dynamics Information Technology, Inc. removed this case from San Diego County Superior Court, asserting jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"). (Notice of Removal ("Notice") ¶ 6, ECF No. 1.) Plaintiff Carlos Rodriguez filed a Motion to Remand, arguing Defendant's Notice of Removal fails to show CAFA's amount-in-controversy requirement is satisfied. (Mot. to Remand, ECF Nos. 12, 13.) Plaintiff also argues the Court should sever and remand one of his claims for lack of equitable jurisdiction. (*Id.*) Defendant opposes (Opp'n, ECF No. 16), and Plaintiff replies (Reply, ECF No. 17). The Court finds this Motion suitable for determination on

the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

For the reasons set forth below, the Court finds CAFA's amount-in-controversy requirement is satisfied and **DENIES** Plaintiff's Motion to Remand. The Court also **DENIES WITHOUT PREJUDICE** Plaintiff's request to sever and remand the equitable claim. The Court orders Defendant to file a supplemental brief addressing new precedent on this issue.

## BACKGROUND

Defendant is an information technology company that employed Rodriguez as a non-exempt employee from June 2023 to June 2024. (Compl. ¶¶ 1–2, ECF No. 1-2.)[1] Plaintiff alleges Defendant denied him and other employees the benefits of the California Labor Code. (*Id.* ¶¶ 14–22.) Furthermore, Plaintiff alleges Defendant failed to pay minimum and overtime wages, provide meal and rest periods, furnish the full amount of wages due at termination, and maintain accurate itemized wage statements. (*Id.*) Plaintiff asserts these claims on behalf of himself and "all other current and former non-exempt employees of Defendant within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')." (*Id.* ¶ 23.)

## LEGAL STANDARD

A case is removable if it could have originally been filed in federal court. *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) (citing 28 U.S.C. § 1441(a)). Whether removal is proper depends on the pleadings "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

"[N]o antiremoval presumption attends cases invoking CAFA," and a defendant's notice of removal need only include a plausible allegation that the amount in controversy

---

[1] The Court refers only to Defendant General Dynamics because, to the Court's knowledge, Defendant David Aimilios has not been served. (*See* Notice ¶ 11.)

exceeds the threshold. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "The burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chem.*, 443 F.3d 676, 685 (9th Cir. 2006).

CAFA confers federal jurisdiction over class actions involving: (1) minimal diversity; (2) at least 100 putative members; and (3) over $5 million in controversy, inclusive of attorneys' fees but exclusive of costs and interest. 28 U.S.C. § 1332(d)(2), (d)(5). Class members' claims may be aggregated to satisfy the amount-in-controversy requirement. *E.g.*, *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). The amount in controversy "encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 791 (9th Cir. 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018)).

## ANALYSIS

### I. Amount in Controversy

At issue is first whether Defendant shows that the amount-in-controversy requirement under CAFA is met.[2] The Court starts by reviewing the short and plain statement requirement and Defendant's amount-in-controversy assessment. Next, the Court considers Plaintiff's attacks on Defendant's assessment, including Defendant's proposed violation rates and calculations.

### A. "Short and Plain" Statement

To remove a case to federal court, the defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). As mentioned, the defendant's notice of removal "need include only a plausible allegation

---

[2] Minimal diversity exists under CAFA as the putative class includes California citizens, and Defendant is a Virginia corporation. (Notice ¶ 12.) *See* 28 U.S.C. § 1332(d)(2)(A). Additionally, Defendant alleges the putative class is greater than 100 members, and Plaintiff's Opposition is limited to disputing the amount in controversy. (Notice ¶ 13.) *See* 28 U.S.C. § 1332(d)(5)(B).

that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

Defendant's Notice of Removal meets this requirement. Defendant relies on allegations in the Complaint and several assumptions to approximate the amount in controversy for four of Plaintiff's claims. (Notice ¶¶ 14–46.) For example, for Plaintiff's meal and rest period claims, Defendant assumes one meal and one rest period violation per workweek per employee in light of the Complaint's allegations. (*Id.* ¶¶ 22–28.) Defendant further alleges that its non-exempt employees worked at least 65,000 workweeks over the relevant period, and the average hourly rate of these employees was approximately $28.50. (*Id.* ¶ 27.) These data points allow Defendant to reasonably estimate the potential value of the claims. (*Id.* ¶ 28.) Defendant similarly assesses Plaintiff's claims for waiting time penalties and inaccurate wage statements. (*Id.* ¶¶ 29–41.) Overall, Defendant plausibly alleges that the amount in controversy exceeds $5 million. (*Id.* ¶ 42.)

### B. Defendant's Evidence

Although the Notice of Removal is sufficient, more is required to fend off Plaintiff's Motion to Remand. Where the plaintiff contests the amount in controversy, "evidence establishing the amount is required." *Dart Cherokee*, 574 U.S. at 89. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

Under this standard, a defendant may rely on "reasonable assumptions" to establish its amount-in-controversy assessment. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1197–99). The removing defendant may present "a chain of reasoning that includes assumptions" so long as those assumptions are grounded in the complaint or other evidence. *See id.* at 925. Assumptions "cannot be pulled from thin air," but may be reasonable if tethered to the allegations of the complaint. *Id.* A defendant may also support its showing with "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant

to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

In responding to Plaintiff's challenge, Defendant again relies on assumptions based on Plaintiff's Complaint but also points to a declaration from Michele Shuster, Defendant's Director of Data Analytics. (Shuster Decl. ¶ 1, ECF No. 16-2.) Ms. Shuster's declaration analyzes a summary report of electronic employment records, including personnel files, dates of employment, time data, and pay data. (*Id.* ¶ 2.) According to Ms. Shuster, the summary report covers 806 non-exempt employees in California who collectively worked 65,317 weeks between February 5, 2021, and September 9, 2024. (*Id.* ¶ 3.) Her review indicates that employees were typically scheduled to work shifts of 7–8 hours, 5 days per week, for an average of 38 hours per week (7.6 hours per day). (*Id.*)

Ms. Shuster also determined that employees' base hourly rates ranged from $14.57 per hour to $62.50, with an average rate of $28.76 per hour. (Shuster Decl. ¶ 4.) Additionally, Ms. Shuster identified that the employment of 286 of the 806 hourly non-exempt employees ended between February 5, 2022, and September 9, 2024. (*Id.* ¶ 5.) These former employees worked an average of 37.6 hours per week with an average base hourly rate of $28.18. (*Id.*) Defendant uses this evidence to calculate the amount in controversy for the following claims.

### 1. Meal and Rest Periods

Plaintiff's third and fourth causes of action seek damages on behalf of the Class Members under Labor Code sections 226.7 and 512 for failure to pay meal and rest period premiums. (Compl. ¶¶ 46–61.) Defendant calculates the amount in controversy for these claims using the formula: $28.76 per hour x (1 meal period violation per week + 1 rest period violation per week) x 65,317 workweeks. (Opp'n 9:17–21.) Consequently, Defendant approximates a total of $3,757,033 in controversy for these two claims. (*See id.* (rounding down).)

### 2. Waiting Time Penalties

Plaintiff alleges that Defendant "intentionally adopted policies or practices incompatible with the requirements of California Labor Code sections 201 and 202." (Compl. ¶ 66.) As a result, "Plaintiff and Class Members are entitled to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days." (*Id.* ¶ 67.)

According to Ms. Shuster's declaration, between February 5, 2022, and September 9, 2024, 286 putative class members ended their employment with Defendant in California. (Shuster Decl. ¶ 5.) Ms. Shuster states that the average final hourly rate of pay for these former employees was $28.18 per hour, and they worked an average of 37.6 hours per week. (*Id.*) She further notes that the average daily shift worked was approximately 7.5 hours. (*Id.* ¶¶ 3, 5.) Defendant estimates the amount in controversy for this claim using the formula: 7.5 hours per day x $28.18 per hour x 30 days x 286 employees. (Opp'n 12:7–12.) Based on this calculation, Defendant approximates a total of $1,813,383. (*Id.*)

### 3. Wage Statements

Plaintiff's sixth cause of action seeks damages on behalf of Plaintiff and the Class Members under California Labor Code section 226 for failure to provide accurate and itemized wage statements. (Compl. ¶¶ 70–77.) Where the statutory penalties are sought, violations under section 226 are assessed at $50 for the first violation and $100 for each subsequent violation, up to an aggregate maximum of $4,000 per employee. Cal. Lab. Code § 226(e)(1).

To calculate the amount in controversy, Defendant states that it issued wage statements to non-exempt employees in California on a biweekly basis. (Shuster Decl. ¶ 6.) Ms. Shuster states that Defendant had 488 non-exempt employees in California who worked from February 5, 2024, to September 9, 2024, who collectively received approximately 6,633 wage statements during that period. (*Id.*) Defendant subtracts the 488 initial pay periods from the total of 6,633 pay periods to arrive at 6,145 subsequent violations. (Opp'n 13 n.8.) Additionally, Defendant asserts that no single putative class

member exceeded the $4,000 statutory cap. (*Id.*; Shuster Decl. ¶ 6.) Based on these figures, Defendant calculates the amount in controversy for this claim as $638,900 using the formula: (488 initial violations x $50) + (6,145 subsequent violations x $100). (Opp'n 13:24–25.)

    **4.**    **Attorneys' Fees**

Plaintiff seeks an award of attorneys' fees for each California Labor Code cause of action. (Compl. ¶¶ 39, 45, 53, 61, 77; Prayer for Relief ¶ M.) Defendant assumes that, if Plaintiff prevails, Plaintiff would be awarded an additional 25% of the value of the recovery as attorneys' fees, which Defendant contends is the benchmark used to estimate attorneys' fees for amount in controversy purposes. (*See* Notice ¶¶ 43–45.)

Defendant argues that attorneys' fees should be included in the amount in controversy. (Opp'n 14:10–25.) *See Fritsch*, 899 F.3d at 794 ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met"). Based on this approach, Defendant estimates that attorneys' fees would add up to approximately $1,552,329 for the meal and rest period, waiting time penalties, and wage statement claims. (*See* Opp'n 16:13–14.)[3]

Overall, Defendant substantiates the allegations from its Notice of Removal with evidence, and Defendant's calculations are not materially different from those found in the Notice's short and plain statement of the grounds for removal.

    **C.**    **Plaintiff's Challenges to Defendant's Showing**

Plaintiff challenges the reasonableness of Defendant's assumptions regarding the amount in controversy. (*See generally* Reply.) One way to challenge the defendant's jurisdictional allegations is to make a "factual attack." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699–700 (9th Cir. 2020). A factual attack includes "making a reasoned argument as

---

[3] Defendant's Opposition calculates the potential fees as $1,602,470 instead of $1,552,329, but this figure appears to be a mistake. (*See* Opp'n 16:13–14.) Defendant uses $6,409,881 as the sum of the amount in controversy for the underlying Labor Code claims, but adding $3,757,033 (meal and rest period claims); $1,813,383 (waiting time penalties claim); and $638,900 (wage statements claim) together is $6,209,316—not $6,409,881. (*See id.*)

- 7 -

25cv0626

to why any assumptions on which [the allegations] are based are not supported by evidence." *Id.* There is no requirement that a plaintiff must produce any evidence or alternative assumptions. *See Ibarra*, 775 F.3d at 1199. Yet, a plaintiff may bolster the challenge by submitting evidence, such as a declaration detailing how often the plaintiff personally experienced the alleged violations. *See id.*; *see also Harris*, 980 F.3d at 700 (holding a plaintiff may challenge a defendant's jurisdictional assumptions through factual arguments without introducing contrary evidence, thereby requiring the defendant to support its allegations with proof).

Here, as in *Harris*, Defendant treats Plaintiff's Motion to Remand as a factual attack. *See* 980 F.3d at 700. By submitting Ms. Shuster's declaration, Defendant provides evidence to support its assumptions underlying the calculation of the amount in controversy. Hence, the Court must assess Plaintiff's arguments and determine whether Defendant has shown "by a preponderance of the evidence that its assumptions" are reasonable. *See id.* at 701.

To that end, Plaintiff argues Defendant's calculations should be rejected because Defendant's assumptions are not tethered to the Complaint. (Reply 1:6–7.) Plaintiff argues that Ms. Shuster's declaration does not address Defendant's violation rates or provide any information regarding Defendant's policies or practices that would support the assumed rates. (*Id.* at 2:26–28.) However, "a party's access to additional information does not necessarily render the assumptions made by that party unreasonable." *Shachno v. Marriott Int'l, Inc.*, No. 22-CV-1215-TWR (JLB), 2023 WL 316367, at *8 (S.D. Cal. Jan. 19, 2023). Indeed, "a defendant need not make the plaintiff's case for [him] or prove the amount in controversy beyond a legal certainty." *Harris*, 980 F.3d at 701.

> As is inescapable at this early stage of the litigation, the removing party must be able to rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," as long as the reasoning and underlying assumptions are reasonable.

*Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)). Here, Defendant's reliance on Ms. Shuster's analysis of its employment records, time records, and payroll data reasonably supports Defendant's calculations. (*See* Shuster Decl. ¶¶ 2–6.)

Moreover, Defendant's assumptions are reasonably based on both Ms. Shuster's analysis and the language in Plaintiff's Complaint. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 809 (9th Cir. 2025). Whether the alleged violations occurred from time to time, as a matter of pattern and practice, or uniformly, as alleged in the complaint, impacts the amount in controversy calculation for wage-and-hour claims. *See Arias*, 936 F.3d at 925–26. This frequency informs the court's adoption of a violation rate expressed as a percentage when calculating the amount in controversy. *See, e.g., Powell v. USI Ins. Servs., LLC*, No. 2:23-cv-04129-ODW (BFMx), 2023 WL 6276578, at *3–5 (C.D. Cal. Sept. 25, 2023) (distinguishing between allegations of a pattern and practice, which could not reasonably support a 100% violation rate, and allegations resulting from a uniform policy, which could plausibly support a 100% violation rate); *Olson v. Becton, Dickinson & Co.*, No. 19-cv-865-MMA-BGS, 2019 WL 4673329, at *2–5 (S.D. Cal. Sept. 25, 2019) (assessing violation rates to resolve motion to remand). Accordingly, the Court considers the violation rate for each challenged calculation below.

### 1. Meal and Rest Periods

Plaintiff argues the Court should reject Defendant's calculation of the amount in controversy for the third and fourth causes of action, contending that Defendant improperly applies a 20% violation rate to all class members when "the number of affected employees cannot reasonably be assumed to be 100% of employees." (Reply 2:15–20.)

In aggregating the claims for missed meal and rest periods, Defendant estimates the total is $3,757,033. *See supra* Section I.B.1. In calculating this amount, Defendant relies on the Ninth Circuit's decision in *Perez*, 131 F.4th 804. There, the Ninth Circuit explained that where a complaint alleges violations occurred "at times," it is reasonable to compute the amount in controversy by making an assumption about the rate at which violations

occurred, so long as that assumption is tethered to the language of the complaint. *Id.* The Ninth Circuit contrasted that circumstance from *Ibarra*, where "the defendant had to submit evidence of the violation rate because its interpretation of the allegations in the complaint was unreasonable." *Id.* at 809. Here, Defendant uses a 20% violation rate, which is appropriately tethered to the "at times" language in Plaintiff's Complaint. (Opp'n 8:17–20.)

Nevertheless, Plaintiff contends that it is unreasonable to assume that all class members were affected by the violations alleged in the third and fourth causes of action. (Reply 2:17–20.) In Plaintiff's view, the Complaint suggests a narrower group because the Complaint contains language providing that "Plaintiff and [the] Class Members, or some of them," suffered the alleged wage-and-hour violations "at times." (*Id.*; *see also* Compl. ¶¶ 13–19.)

However, it is Plaintiff who chose to plead his allegations with a net instead of a spear. By doing so, Plaintiff left the Complaint subject to the reasonable inference that all class members could recover for the alleged violations. The Complaint does not allege only some of the class members suffered the violations. Rather, it alleges all of them—or, alternatively, "some of them"—suffered the violations. (Compl. ¶¶ 13–19.) This language, when viewed in context with the class allegations, supports the inference that all class members could potentially recover for these violations. (*Id.* ¶¶ 23–32.) Indeed, "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *See Arias*, 936 F.3d at 927. And Plaintiff's class allegations necessarily plead that all the class members were subject to "Defendants' common course of conduct," with various common questions of law or fact. (Compl. ¶¶ 28–29.)

Thus, Defendant is entitled to rely on Plaintiff's allegations that indicate the violations were suffered by all the class members. *See Demaria v. Big Lots Stores–PNS, LLC*, No. 2:23-CV-00296-DJC-CKD, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023) ("While Plaintiff uses language potentially limiting recovery to only some class members, i.e., 'or some of them,' 'or' indicates that all class members could conceivably recover[.]").

Based on those allegations, Defendant reasonably assumes that the alleged meal and rest period violations were suffered by all the class members. (*See* Compl. ¶¶ 51, 59.) Defendant also reasonably assumes a 20% violation rate for these claims based on the "at times" language in the Complaint. (*See id.* ¶¶ 13–19.) *See Perez*, 131 F.4th at 809–10. Hence, the Court finds Defendant has shown by a preponderance of the evidence that Plaintiff's third and fourth causes of action place $3,757,033 in controversy.

### 2. Waiting Time Penalties

Plaintiff next disputes Defendant's calculation of waiting time penalties under California Labor Code sections 201–203. As mentioned, Plaintiff alleges that Defendant failed to timely pay all wages due at resignation or termination and seeks penalties under section 203 for up to thirty days' wages for each class member. (Compl. ¶¶ 65–67.)

If an employer "willfully fails to pay" all earned and unpaid wages at the time of separation, the employee is entitled to a waiting time penalty equal to his or her daily wage for each day the wages remain unpaid, up to thirty days. Cal. Lab. Code § 203; *see also Hill v. Walmart Inc.*, 32 F.4th 811, 815 (9th Cir. 2022). Courts have held that a single unpaid wage at the time of separation is sufficient to trigger liability. *E.g.*, *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 977 (E.D. Cal. 2023) ("Further, recovery of waiting time penalties does not hinge on the number of violations committed; rather the defendant need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply." (citation modified)); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC-SPx, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (same). Waiting time penalties are derivative and depend on an underlying wage violation. *Alarcon v. Target Corp.*, No. 5:25-CV-01276-SPG-SP, 2025 WL 2155371, at *4 (C.D. Cal. July 28, 2025).

Plaintiff challenges Defendant's estimate on the grounds that it unreasonably assumes a 100% violation rate for the waiting time penalties claim. (Reply 2:21–28, 3:1–12.) This argument is unpersuasive. Because the waiting time claim is derivative of the underlying wage-and-hour claims, it is reasonable to apply a 100% violation rate. *See,*

*e.g.*, *Serrieh*, 707 F. Supp. 3d at 977; *Alarcon*, 2025 WL 2155371, at *4. As explained above, Defendant reasonably assumes that all the class members suffered meal and rest period violations at a 20% violation rate. Given the Complaint's allegations, it is also reasonable to assume each separated employee would have experienced at least one instance of unpaid wages persisting through termination, thereby triggering section 203 penalties. *See* Cal. Lab. Code § 203; *Jauregui*, 28 F.4th 989, 993–94; *see also, e.g.*, *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19-cv-1675-GPC(BLM), 2019 WL 5677846, at *8–9 (S.D. Cal. Nov. 1, 2019) (finding that based upon one missed meal and rest period, defendant's assumption of a 100% violation rate for wage statement and waiting time penalties claims was reasonable). Plaintiff argues the Court must read the "at times" language in the waiting time penalties cause of action in isolation (*see* Reply 2:21–3:12), but this strained construction is not supported by the Complaint as a whole, which alleges Defendant did not pay all the wages owed to the class members on various theories. *Cf. Jauregui*, 28 F.4th 989, 993–94 (reasoning "it was not unreasonable for [Defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty"). Accordingly, Defendant's estimate of $1,813,383 in waiting time penalties is supported by competent evidence and reasonable assumptions.

### 3. Wage Statements

Plaintiff likewise argues that Defendant's use of a 100% violation rate for the inaccurate wage statement claim is an unreasonable interpretation of the allegations because the Complaint uses qualifying language such as "at times" and "some of them." (Reply 2:21–22, 3:1–3.) The Court's reasoning above carries over to this argument.

Like the waiting time penalties claim, Defendant's assumption is supported both by Plaintiff's allegations and by Defendant's employment records. Plaintiff's wage statement claim is derivative of the underlying wage-and-hour violations, including the meal and rest period claims considered in this order. Hence, if it is reasonable to assume that 100% of

the class members suffered a meal or rest period violation 20% of the time, then each class member would have averaged at least one violation for that pay period. That, in turn, would render each affected pay stub inaccurate, meaning 100% of class members also suffered an inaccurate wage statement violation for that pay period. *See, e.g.*, *Thompson v. La Petite Acad., Inc.*, No. 2:22-CV-04348-AB (JPRx), 2022 WL 5241838, at *4 (C.D. Cal. Oct. 6, 2022) ("Given the allegations about the existence of policies resulting in the underlying violations, it was reasonable to assume that each wage statement contained at least one inaccuracy, making Defendants' assumption in their calculation reasonable."); *Cavada*, 2019 WL 5677846, at *8 ("Therefore, since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties."). The Court is likewise unconvinced by Plaintiff's reliance on the "at times" language in the Complaint. Given the Complaint's other allegations, Plaintiff's decision to disperse indeterminate qualifiers throughout this cause of action does not change the claim's derivative nature or render Defendant's assumption unreasonable.

Accordingly, Defendant's assumption of a 100% violation rate for the wage statement claim is a reasonable, evidence-supported interpretation of Plaintiff's allegations. Thus, Defendant's estimate of $638,900 for wage statement penalties withstands scrutiny.

| Cause of Action | Amount in Controversy |
|---|---|
| Missed Meal Periods | $1,878,516.50 |
| Missed Rest Periods | $1,878,516.50 |
| Waiting Time Penalties | $1,813,383.00 |
| Inaccurate Wage Statements | $638,900.00 |
| **Total** | **$6,209,316.00** |

Overall, Defendant persuasively shows the amount in controversy surpasses the $5 million required by CAFA. The Court underscores that Defendant's analysis is conservative because it does not address all the wage-and-hour claims in the Complaint. Further, because the amount placed in controversy for the substantive violations exceeds $5 million, the Court does not further consider the issue of attorneys' fees. Hence,

Defendant establishes the requisite amount in controversy by a preponderance of the evidence. Plaintiff's Motion to Remand on this basis is denied.

## II.     Equitable Jurisdiction

Plaintiff contends the Court lacks equitable jurisdiction over his claim under California's Unfair Competition Law ("UCL"). (Mot. 15:26–17:17.) Plaintiff argues his UCL claim cannot proceed under this Court's equitable jurisdiction because he does not allege the lack of an adequate remedy at law. (*Id.*) He further requests that, "should this Court decide not to remand the entirety of this action, at a minimum it should sever Plaintiff's UCL claim and remand it to state court." (*Id.* 17:25–26.) In response, Defendant argues the appropriate course is for this Court to dismiss, not remand, the UCL claim for lack of equitable jurisdiction. (Opp'n 16:15–18:15.)

While this Motion was pending, however, the landscape shifted. In *Ruiz v. Bradford Exchange, Ltd.*, 153 F.4th 907 (9th Cir. 2025), the Ninth Circuit addressed this issue. It started by summarizing the authorities discussed in Plaintiff's and Defendant's briefs:

> The *Sonner* cases and *Guzman*, which all concerned lawsuits initially filed in federal court, yield a few key conclusions that are relevant here: federal courts in diversity cases apply federal principles of equitable jurisdiction; a plaintiff who fails to allege the lack of an adequate remedy at law cannot utilize a federal court's equitable jurisdiction; equitable jurisdiction is not a matter of subject matter jurisdiction; and when a case is initially filed in federal court and the defendant demonstrates that equitable jurisdiction is lacking, a court must dismiss the case, but without prejudice.

*Id.* at 912. The Ninth Circuit then assessed whether remand instead of dismissal would be appropriate in a case removed under CAFA. Ultimately, it held "district courts have the power to remand a removed case to state court for lack of equitable jurisdiction." *Id.* at 915.

"But that is not the end of the matter," as the Ninth Circuit explained. *Ruiz*, 153 F.4th at 915. The Ninth Circuit concluded a defendant can waive "the adequate-remedy-at-law issue." *Id.* at 918. "That is especially so when, at bottom, the plaintiff is seeking the same ultimate relief that would be afforded through claims at law—money—but is

bringing claims for equitable restitution to avoid removal." *Id.* Ultimately, the Ninth Circuit held that "if a plaintiff files a lawsuit in state court seeking only equitable relief and the case is properly removed to federal court, a defendant can defeat remand on equitable jurisdiction grounds by waiving the adequate-remedy-at-law issue." *Id.* at 918; *see also Avery v. TEKsystems, Inc.*, No. 22-CV-02733-JSC, 2025 WL 2837786, at *3 (N.D. Cal. Oct. 7, 2025) (severing and remanding UCL claims following the defendant's choice to waive this issue following *Ruiz*).

Here, the Court recognizes that *Ruiz* is not on all fours. The plaintiff in *Ruiz* sought only equitable relief; Plaintiff here is seeking both damages and equitable relief. Plaintiff is therefore asking the Court to sever the UCL claim and order a partial remand, as opposed to a complete remand. Other courts have permitted this approach. *See Avery*, 2025 WL 2837786, at *3; *see also Morgan v. Rohr, Inc.*, No. 20-cv-574-GPC-AHG, 2023 WL 7713582, at *5 (S.D. Cal. Nov. 15, 2023) (collecting cases and concluding remand of UCL claim in wage-and-hour class action removed under CAFA was appropriate). Further, Defendant has not waived the adequate-remedy-at-law issue. Rather, Defendant argues in its pending Motion to Dismiss that the Court should dismiss the UCL claim for lack of equitable jurisdiction. (*See* ECF No. 11 ("Here, the Court should dismiss Plaintiff's UCL claim because Plaintiff has not pleaded, and cannot plead, actual facts demonstrating he lacks an adequate remedy at law.").)

Fairness, however, dictates that Defendant should have the opportunity to address *Ruiz* before the Court continues. Defendant may choose to waive this issue to preclude a partial remand. Therefore, the Court denies without prejudice Plaintiff's Motion to Remand on this point. The Court will also order Defendant to file a supplemental brief addressing *Ruiz*.

## CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over this action pursuant to CAFA. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand (ECF Nos. 12, 13) for lack of subject matter jurisdiction. The Court **DENIES WITHOUT PREJUDICE** Plaintiff's request to sever and remand the UCL claim for lack of equitable jurisdiction.

In addition, the Court **ORDERS** Defendant to file a supplemental brief indicating whether it waives the adequate-remedy-at-law issue with respect to Plaintiff's UCL claim. Defendant may also raise any arguments based on *Ruiz v. Bradford Exchange, Ltd.*, 153 F.4th 907 (9th Cir. 2025), but Defendant's brief may not exceed three pages. The Court will review the brief and determine whether a response from Plaintiff is necessary before revisiting the issue. Defendant's brief must be filed no later than **November 14, 2025**.

**IT IS SO ORDERED.**

DATED: November 4, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court